We've consolidated the Thursday and Friday calendars so we have six cases submitted previously submitted on the briefs and I will not go through all of those cases. The council and the parties have been notified previously so we will take the remaining cases in the order in which they appear on the docket and the first case is Roblin v. Newmar Corporation. Mr. Lindahl. Thank you Your Honor. I'm Dan Lindahl appearing on behalf of the appellant Newmar Corporation. I'll keep an eye on the clock and reserve whatever unused time I have for my rebuttal. This case involves plaintiff's claim under the Oregon property regulation and enforcement statute, commonly known as Oregon's Lemon Law. The district court resolved all issues of liability as a matter of law and also resolved all issues of damages as a matter of law and entered a judgment in favor of Mr. Roblin for something in excess of $700,000. The district court then addressed Mr. Roblin's entitlement to fees under the Lemon Law, granted those fees and assessed fees and costs for another $650,000 approximately. Newmar appeals from the resulting judgments and asks this court to reverse the judgment in favor of the matter for trial on Mr. Roblin's Lemon Law claim as well as his additional claims which he voluntarily dismissed once the Lemon Law matter was resolved as a matter of law. Counsel, without regard to the question of whether Newmar is responsible for the warranty of component suppliers, do you disagree that this vehicle meets the elements of a lemon based on the record of breakdowns and attempted repairs? The answer to that question depends on whether Newmar is within the statute. My question assumed that it is and the question simply is whether, I mean, you have to admit this vehicle suffered an awful lot of breakdowns and there were many attempts made unsuccessfully to repair them and basically rendered the vehicle unusable for the purposes for which Mr. Roblin purchased it. Is there really any quarrel about that? The question is who's responsible? That's, who's responsible is certainly one of the questions. Let me drill down on Judge Tolman's question because it's of interest to me too. You argue in your brief that a fact founder could have found that each of the repairs addressed a different non-conformity because they involved different parts of the engine cooling system. Are you, so I want to make clear, are you maintaining that even if everything he alleges as true, it was true, putting aside the coverage issue as Judge Tolman said, the vehicle wasn't a lemon under the Oregon lemon law because different parts of the lemon were repaired at each point, not the same part? It gets a little confusing. Well, that's why I'm asking. I'm confused. So, nobody's fault. So, just, I think you can just answer the question. If, let's assume that you lose on your argument that the ultimate manufacturer, your client, isn't liable for warranties of, made by component manufacturers. Let's assume that you, the District Court ruled correctly that your client is liable for those warranties. Is there any factual dispute about whether or not this vehicle otherwise meets the requirements of the lemon law? I think I've phrased that carefully. That's basically what I was asking. That was a much more articulate way of asking what I was concerned about. Well, if the question is, if we're liable under the lemon law, then we're liable. No, no, no, no, no, no. I must not be, perhaps I'm not clear because I think it's a simple question. Let's assume that the ultimate manufacturers, which is to say somebody in the position of your client, is liable under the lemon law if the warranties of component manufacturers are not honored. Now, my question is, if that's the legal framework, is there a factual dispute in this case about whether the vehicle qualifies, Mr. Roblin, for relief under the Oregon lemon law? The remaining factual issue would be whether there was evidence for a jury to consider if Newmar had rebutted the presumption that the vehicle had undergone a reasonable number of repairs. So we're on summary judgment here, and I'm looking through the record in your submissions for any proffer of evidence that would rebut that presumption. If I don't find that, at least in my initial reading of the record, tell me where in the record I would find a proffer from your side to rebut the presumption. Well, the evidence we've identified and relied on are each, well, first of all, each problem, each alleged defect was fixed. So that could allow a jury to determine there had been, they hadn't satisfied the requirement that there be a reasonable number of attempts to repair because, in fact, the repairs were successful. Counsel, I don't think that's accurate with regard to the engine cooling problem, is it? That's a pretty key part of the vehicle, and it kept breaking down to the point that, I guess, the last time you had to stop every third of a mile or something and let the engine cool down. I mean, that doesn't sound like it ever got fixed. Well, I respectfully, of course, have to disagree. We had a problem with a coolant hose that was repaired roadside by AAA, never reoccurred. They replaced the fan clutch. That was successful, never redone. But it all goes to the successful and continued reliability of the operation of the cooling system. I think you'd have a much better argument if there were minor defects, you know, say, the slide out versus maybe an electrical system problem or that sort of thing. But here, the problem kind of goes to the heart of the usefulness of a mobile motor home, doesn't it? I mean, if you can't drive it down the road without it breaking down because the engine overheats, that's a pretty material defect in the vehicle. Well, I guess the question is whether that assessment on this record can be resolved as a matter of law or whether Newmar should have the opportunity to talk to a jury about how each problem was, in fact, distinct and each problem was, in fact, cured. Now, it is certainly... Isn't that a legal argument? In other words, let's assume that you're correct in your factual description of the record. What Judge... I don't want to say what Judge Tolman was asking because he may have been thinking of something different. But what troubles me is this. Let's assume I get a vehicle and it has a continuing series of problems and you fix one temporarily. Another one occurs. You fix it temporarily. Another one occurs. You fix it and they keep occurring. And the statute says there's a presumption under those circumstances that the vehicle qualifies under the Lemon Law. You're saying, no, it shouldn't because the evidence is clear that we fixed it on each occasion. That's not a dispute for the jury to resolve, is it? Isn't that a legal question about whether or not that takes you out of the coverage of the Lemon Law? Well, no, I think it is for the jury. Are these the same nonconformity? Is it the same problem? Or are they different problems? And there's the associated issue. Were they unsuccessful repairs? Because they have to be unsuccessful to satisfy the statute. And I want to give you time to address the major issue, but that's what I understood you to be arguing on pages 47 and 48 of your brief. That we were fixing different problems each time and therefore it doesn't qualify under the Lemon Law. And it seems to me that's an issue of law. I don't read the Lemon Law as saying it has to be precisely the same problem. I read it as saying it's the utility of the vehicle. And some of those problems were components of the cooling system, which, yeah, it might have been a fan clutch one time. Maybe it was a thermometer the next time. But the bottom line is the cooling system didn't work. It kept breaking down. We're down to about five minutes. And we're quibbling over whether this is a legal or factual question. I think we're well. That's something we can decide. And I'd like Mr. Lindahl to address why he thinks the Oregon statute requires individuals who come within the Lemon Law situation to have to sue the individual component manufacturers as opposed to the overall manufacturer of the product. Yeah, sure, Your Honor. And that goes to this statutory interpretation quarrel. It's sort of the threshold issue. Whether Numar's even susceptible to suit under the Lemon Law for defects in the chassis that it didn't manufacture and didn't warrant and disclaim the warranty. And our view and our reading of the statute is that the statute says the manufacturer can be subject to liability for a failure, a nonconformity with the manufacturer's warranty, in which case the manufacturer is liable. Under our interpretation of the statute, manufacturer has the same meat. Well, but you've rephrased the statute. The statute says if the manufacturer or agents or authorized dealers of the manufacturer are unable to conform the motor vehicle to an applicable manufacturers express warranty. You read the word and as if it were the don't you? Well, it's and because it precedes applicable. So grammatically, it has to be and rather than. Why wouldn't it just say the manufacturers express warranty? Your reading takes an inapplicable and substitutes for the word the doesn't it? Well, no, I think the focus of our argument is that it tracks back to is it a man? Is it that use that word manufacturer repeatedly? And our understanding of the statute is that it's focused on, you know, who who made the warranty? And that person, that entity is must answer. I understand that's your argument. And my question is, doesn't doesn't that mean, in effect, what you've done is taken out the words and applicable and substituted for them the word the. I'm looking at this text of the statute. Your reading of the statute is that the manufacturer must conform the motor vehicle to the manufacturers express warranty, meaning if there are 50 of them, then the consumer has to look to each of the 50 manufacturers for a remedy under the under your interpretation of the statute. Well, what I think the way I understand it is that it is, you know, so any warranty by the manufacturer who made the warranties. So if it's General Motors and they import parts and chassis and wheels and brake systems and engines from different manufacturers, then a consumer can't just bring a lemon law claim against GM. It has to go and sue the chassis manufacturer or the engine maker or the cooling system manufacturer. That's the conclusion of your argument, is it not? It is, your honor. OK. OK, counsel, may I ask the question that that occurred to me in reading this? Why can't Newmark pursue Freightliner, say, on an indemnification theory, given that if if, in fact, it is the water cooling system and not just the hose, why can't why doesn't Newmark have recourse against Freightliner? It does, and it is pursuing those claims, your honor. OK, that's my thought. So why put that burden on the consumer as opposed to the person who purchased the individual component parts and put them all together into a product that the consumer buys? Well, you know, as a matter of legislative policy, maybe that's, you know, the way it should have been written. It's not the way we understand it to have been written. Is there anything in the legislative history of this statute that suggests that the legislature's policy was, as you suggest, or are you just making an argument based on its language as you read it? I'm we're relying on the language, your honor. I can't say that I've found anything in the legislative history that props up the argument we're making. I will reserve. I don't have any more time, but I will allow Mr. Sondag to now address. All right. I'll give you a minute at the at the end of Mr. Sondag. And nobody has to use all their time, by the way. Thank you, your honor, and may it please the court. Tom Sondag appearing on behalf of the AAP-LE, Robert Roblin. Our position, I think, is clear from our brief. We believe that the arguments that have been raised by NUMAR on appeal conflict with the plain language of the Lemon Law, as well as that law's unquestioned purpose. And I don't believe that I need to go through the textual and contextual analysis that we've provided in our brief. I do have a separate question that we never got to address with your colleague here. The question is when this car became a Lemon, if you will. And you say it's after the third unsuccessful attempt to repair, and that's what the district court found. But your client continued to use the vehicle for several years thereafter. And so, since you weren't deprived of the use of the vehicle for those several years, why shouldn't a measuring point be when you finally surrendered it to NUMAR? Well, it wasn't several years. He did use it for several months. Several months. I did. Okay, I'm sorry. But they do argue there should be a different measuring point, that since you continued to have the use of it, it wasn't... The purpose of giving you the statutory damages is for the absence of effective use of the vehicle. And you did have effective use of the vehicle for some longer period of time. Tell me how you read the statute as saying, no, I get to move back to the third unsuccessful repair attempt. Sure. So, clearly liability is tied to that third unsuccessful repair attempt. The statute presumes that with the third unsuccessful repair attempt, it's a lemon and the manufacturer is liable. And they're liable and the statute says at that time, the manufacturer shall either replace that vehicle or repurchase that vehicle. So, what is the action that the statute refers to? The liability extends from the time that the manufacturer doesn't take an action. What's the action? Yeah, the action in our view is the third failed attempt. I would note that even if you interpret it the way that NUMAR does, they say, well, the action is actually the remedies that subsection one goes on to commit, which is replacement or repurchase. But they want to kick that out to when a court awards that replacement or repurchase. In our view, even if you were to go that direction, the statute itself says that you shall repurchase or replace that vehicle upon that third attempt and so it takes you back to the same place. But in our view, the action, and I agree that it's a bit inelegant because you could say, well, it's really an omission, but it is an action. They are taking action. They are given the opportunity to repair or correct this condition and they fail. When it hits the third, the statute says, that's a lemon. It's presumed unless you're going to rebut that, and NUMAR did not put forth any evidence that rebuts that, then you're fixed on that third attempt. Is there some element of materiality that is inherent in the statute? Or is it any three defects in the vehicle? Well, we've never taken the possession that it's any defects. There were a number of other defects, but we did tie it to the same nonconformity. Here, the overheating of the motor vehicle. So your argument would not be that the vehicle is a lemon if the first failed repair was the slide-out problem, the second one was an electrical problem, and the third was some other similar type problem. Yes, I believe you'd get into a situation there where then you might have different nonconformities. We certainly don't agree with NUMAR's position that these separate parts were separate nonconformities. I can just imagine Mr. Roblin when he was beside the highway once again after it broke down, he says, well, it's overheated again, being told, well, yeah, but that coolant hose is working great, isn't it? I mean, the point is that they never repaired that overheating problem. They had three opportunities to do it. I will say some statutes make this, the point the court's sort of hitting on here, more definite. And they put an onus on the consumer to say, OK, you've had three tries. We get one more try. And if not, liability attaches. The California statute's written like that. Some others that are in cases cited by NUMAR. But that's not the way the Oregon statute's written. The Oregon statute simply puts the onus on the manufacturer. It says, three failed attempts, it's presumed to be a lemon, and the manufacturer shall repurchase the replacement. So how would, I think you tend to agree that this presumption is rebuttable in some way. How would the manufacturer rebut the presumption that it's a lemon after three unsuccessful repair attempts of the coolant system? What kind of evidence could the manufacturer put in to rebut that presumption? You know, I've thought about that. I think we can first say NUMAR did not even attempt to put it in there. Yeah, that's a separate issue. And that's why I asked your colleague that. I just don't know how one rebuts the presumption, if you're the manufacturer, if the third repair attempt was unsuccessful. What evidence would one put in? I suppose it might be possible. I mean, I'm not a mechanic. But these engines these days are very complicated animals, right? There's a lot of computer technology these days. Perhaps you could say, you could put forth an argument, this was really reasonable that we were focused on this condition here and thought it would repair it. But in fact, it was this over here, and we completely missed it. And so we ought to be able to, this ought to be no harm, no foul. Could you rebut it with a fourth successful attempt? See, that's what I was wondering, looking at the statute. So we now presume it's a lemon, and the manufacturer says, bring it in, and I fix it. I've replaced the entire cooling system. It now works fine. Would that rebut the presumption? No, I don't think so. Because then I think you might be able to do that under the statutes I referred to. But then it's too late under the Oregon statute. So I'm having some difficulty figuring out, even though everybody agrees it's a rebuttable presumption, how in the world anybody can rebut it? Well, I think I tried to. Yeah, no, I think that's a valiant attempt. But I'm just not sure. I'm just not sure it works. Well, it's an interesting hypothetical question. But we had, what, about a dozen different breakdowns of this vehicle? I mean, if there's a stronger term than a lemon, I'm not sure what adjective I would attach to this vehicle. Yeah, I think that's an apt statement, Your Honor. Concluding in the final breakdown, when the fan literally broke, the fan cage broke apart and the fan itself just hurtled into the radiator and cracked up. That was sort of the final straw in those efforts. But that was well after, of course, the third unsuccessful attempt to repair the condition. I had a factual question about the record. I think I understand it. But at some point in time, your client tried to get Newmar to take the vehicle back. Yes. And when was that in relation to the third unsuccessful attempt? How long thereafter? Well, Mr. Roblin became progressively unhappy with each breakdown. I would say that I think the record reveals that in December, which is when the, after the fourth breakdown, when it was in for the fourth repair in Bakersfield, December of 2015, Mr. Roblin wrote to, emailed Newmar and said, this car is broken down enough. This is a lemon. And if this doesn't get fixed, you're going to hear from my lawyer. I think that this is the lemon. I'm going to assert my rights under the lemon law. And I would add that the complaint asserts that, alleges that Mr. Roblin made numerous requests to repurchase, and they were denied by Newmar. And Newmar admits the same in its answer to that complaint. It denied several requests by Mr. Roblin. But I believe the first request was made in December of 2015. I ask this because one way of reading the timing statute is that the action is the refusal to replace the vehicle. And I'm not sure that's very different in time from the third unsuccessful attempt. It's very close in time. But that I would differ, I think, with your honor, when you say that. It's a question, so you don't have to differ with me. Just tell me how you read the statute. Because in our view, it's you shall repair or replace when you hit that third failed attempt. I think unless the court has any further questions, I will respect Judge Wardlaw's comment that I need not use all of my time. But I'd be happy to answer any additional questions that the court may have. I don't have anything. You can save it for a future case, in my view. Put it in the bank. Put it in your bank. Thank you, counsel. And Mr. Lindahl, I'll give you an additional minute if there's anything to rebut. Thank you, your honor. I can see the court has a long docket today. And we've covered the issues, so I have nothing further. All right. Thank you, counsel. Roblin versus Newmar will be submitted. And we'll take up Ayala versus U.S. Express Enterprises.
judges: Wardlaw, Tallman, Hurwitz